1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   GAIL STRUTHERS, an individual,                    CASE NO. 08-CV-1381 H (JMA)

12                                   Plaintiff,         **ORDER DENYING
                                                        PLAINTIFF'S MOTION TO**
13           vs.                                        **ALTER OR AMEND
                                                        JUDGMENT**
14   UBS FINANCIAL SERVICES, INC., a
     corporation; and DOES 1-10, inclusive,
15
                                   Defendant.
16

17          Plaintiff's complaint alleges several causes of action stemming from her employment

18   with Defendant UBS Financial Services, Inc. and the termination of that employment.  (Doc.

19   No. 1.)  On September 8, 2008, Defendant UBS Financial Services, Inc. filed its motion to

20   compel arbitration (Doc. No. 9.) based on two separate arbitration agreements signed by

21   Plaintiff.  After due consideration of briefing from both parties, the Court granted Defendant's

22   motion to compel arbitration and dismissed the case without prejudice.  (Doc. No. 28.)

23          On December 1, 2008, Plaintiff filed an amended motion to alter judgment.  (Doc. No.

24   42.)  Defendant filed an opposition to Plaintiff's motion to amend judgment on January 20,

25   2009.  (Doc. No. 49.)  For the following reasons, the Court denies Plaintiff's motion to alter

26   or amend the Court's judgment.

27   / / /

28   / / /

1

**<u>Background</u>**

2      Before 2006, Plaintiff Gail Struthers worked as an Assistant Vice President, Financial

3  Advisor for Morgan Stanley.  (Struthers Decl. in Opp. to Mot. to Compel Arb. ["Struthers

4  Decl."], ¶ 2.)  Plaintiff's compensation exceeded $300,000 per year.  (<u>Id.</u>)  During Ms.

5  Struther's employment at Morgan Stanley, she became close associates with another financial

6  advisor, Tony Ferner.  (<u>Id.</u> ¶ 4.)  When Mr. Ferner accepted a position as a branch manager at

7  UBS Financial Services, Inc. ("UBS"), he contacted Ms. Struthers and offered her a position

8  as a financial advisor at UBS.  (<u>Id.</u> ¶ 6.)  Ms. Struthers decided to accept the offer.

9      On February 7, 2006, Ms. Struthers signed a "Letter of Understanding" ("LOU")

10 confirming the elements of the compensation package she would receive in her new position

11 at UBS.  (Struthers Decl., Ex. A.)  That Letter of Understanding provided for Ms. Struthers to

12 receive an Employee Forgivable Loan ("EFL") in the amount of approximately $396,000

13 forgivable over 6 years.  (<u>Id.</u> ¶ 2.)  The LOU further provided that the loan would be "subject

14 to all the provisions of the Employee Forgivable Loan Agreement" and stated that a copy of

15 that agreement was enclosed, incorporated by reference and made a part of the LOU.  (<u>Id.</u>)  On

16 March 13, 2006, after Ms. Struthers had resigned from Morgan Stanley and started working

17 at UBS, she signed the Employee Forgivable Loan Agreement (labeled "Promissory Note").

18 (Howard Decl. ISO Mot. to Compel Arb. ["Howard Decl."], Ex. 1.)  The Promissory Note

19 contains an acceleration clause providing that repayment of the loan would be immediately due

20 upon termination of employment for any reason besides disability or death.  (<u>Id.</u> at 2.)  The

21 Promissory Note also contained an arbitration clause providing that:

22          [A]ny disputes between Employee and UBS Financial Services including claims

23          concerning compensation, benefits or other terms or conditions of employment

24          and termination of employment, or any claims for discrimination, retaliation or

25          harassment, or any other claims whether they arise by statute or otherwise . . .

26          will be determined by arbitration as authorized and governed by the arbitration

27          law of the state of New York.

28 (<u>Id.</u> at 5.)

08cv1381

Ms. Struthers also executed a "Form U-4 Uniform Application for Securities Industry Registration or Transfer" (the "U-4") in order to register with the NASD. (Howard Decl., Ex. 2.) This registration is required under a 1993 Securities and Exchange Commission ("SEC") regulation that requires all broker-dealers to be registered with a securities organization such as the NASD. 17 C.F.R. § 240.15b7-1. The U-4 form contains an arbitration clause that covers Ms. Struther's claims. (Id. at 12, ¶ 5.)

On May 15, 2007, UBS terminated Ms. Struthers's employment. (Struthers Decl. ¶ 17.) Plaintiff argues that she should not have to pay back her Employee Forgivable Loan because her termination was due to disability. She further asserts several causes of action stemming from her employment with UBS, including (1) intentional misrepresentation; (2) negligent misrepresentation; (3) violation of plaintiff's rights under the California Fair Employment and Housing Law; (4) invasion of privacy; (5) intentional infliction of emotional distress; (6) breach of implied covenant of good faith and fair dealing; (7) partial rescission; and (8) unlawfully preventing employment by misrepresentation.

**Discussion**

**I.      Motion to Alter Judgment – Legal Standard**

Under Rule 59 of the Federal Rules of Civil Procedure, a party may file a motion to alter or amend a judgment no later than 10 days after the entry of the judgment. Fed. R. Civ. P. 59(e). Amendments to judgments under Rule 59(e) are appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003) (quoting Sch. Dist. No. 1J, Multonomah County, Or. v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993)).

Here, Plaintiff's motion raises no argument that there has been an intervening change in controlling law. Similarly, while Plaintiff presents additional information regarding the state action issue, Plaintiff does not explain why this information could not have been discovered earlier through due diligence, as required for a Rule 59 motion based on new evidence. Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001) ("a party that fails to

introduce facts in a motion or opposition cannot introduce them later in a motion to amend by claiming that they constitute 'newly discovered evidence' unless they were previously unavailable").  Therefore, Plaintiff's motion to amend the Court's judgment depends on Plaintiff's argument that the Court committed clear error or the initial decision was manifestly unjust.  Id.  In evaluating Plaintiff's arguments, the Court bears in mind that "legal arguments made for the first time on a motion to amend" are properly disregarded.  Id.

**II.      Motion to Compel Arbitration – Legal Standard**

The Federal Arbitration Act provides that any arbitration agreement "evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  When one party to such an agreement refuses to arbitrate a dispute, the other party may petition a federal court to compel arbitration.  Id. at § 4.  If the court determines that (1) a valid agreement to arbitrate exists and (2) the agreement encompasses the dispute at issue, the court must enforce the agreement and compel arbitration.  Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

In the Ninth Circuit "[i]ssues regarding the validity or enforcement of a putative contract mandating arbitration should be referred to an arbitrator."  Sanford v. Memberworks, Inc., 483 F.3d 956, 962 (9th Cir. 2007).  Only "challenges to the existence of a contract as a whole are determined by the court prior to ordering arbitration."  Id.

Generally, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

**III.     The Promissory Note Arbitration Clause**

The Promissory Note's arbitration clause provides that New York state law will govern any arbitration. (Howard Decl., Ex. 1 at 5.)  Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination.  Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 937 (9th Cir. 2001).  In this case, because the complaint was filed in California, California's choice of law rules apply.  When faced with a contractual choice of

law provision, California courts apply the test set forth in <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal.4th 459, 465 (Cal. 1992).  Under <u>Nedlloyd</u>, the Court must first determine (1) "whether the chosen state has a substantial relationship to the parties or their transaction" or (2) "whether there is any other reasonable basis for the parties' choice of law."  <u>Id.</u>  If either test is met, the Court must next determine "whether the chosen state's law is contrary to a *fundamental* policy of California."  <u>Id.</u> (emphasis in original).  If no fundamental policy is violated, the Court will enforce the parties' choice of law.

In this case, the <u>Nedlloyd</u> test is met and the choice of law provision is enforceable.  When Plaintiff signed the promissory note, New York state was Defendant UBS's principle place of business.  (Bird Decl. ISO Mot. to Compel Arb. ["Bird Decl."] ¶ 2.)  The Court concludes that this fact constitutes a "reasonable basis for the parties' choice of law."  <u>Nedlloyd</u>, 3 Cal.4th at 465.  Thus, the choice of law provision is enforceable unless New York's law is contrary to a fundamental policy of California.  <u>Id.</u>  Though Plaintiff has demonstrated several material differences between New York and California contract law, the Court is not convinced that these differences render the choice of law provision unenforceable.  If the existence of such differences were enough to nullify a choice of law clause, these agreements would have little force.  Accordingly, the Court applies New York state law with respect to the Promissory Note's arbitration clause.

Plaintiff's objection to the arbitration clause involves her claim that the Promissory Note was executed as a result of fraud and duress.  (FAC ¶¶ 9, 67-72.)  Under New York law, a claim of economic duress requires that "the complaining party was compelled to agree to [the contract] by means of a wrongful threat which precluded the exercise of its free will."  <u>Stewart M. Muller Const. Co., Inc. v. New York Tel. Co.</u>, 40 N.Y.2d 955, 956 (N.Y. 1976).  Plaintiff has not alleged that UBS made any threat to induce her to sign the Promissory Note.  Further, because Plaintiff accepted the Employee Forgivable Loan and did not timely repudiate the agreement, she cannot assert an economic duress claim now to avoid a specific clause of the agreement.  <u>See, Bank Leumi Trust Co. of New York v. D'Evori Int'l, Inc.</u>, 558 N.Y.S.2d 909, 914 (N.Y. App. Div. 1990).

08cv1381

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff further argues that the Promissory Note's arbitration clause should not be enforced because she had no notice of that provision until after she resigned from Morgan Stanley. (FAC ¶ 68.) Plaintiff has not alleged sufficient facts to raise a genuine issue as to her fraud claim. On Feburary 7, 2006, before she resigned from Morgan Stanley, she signed an LOU which states that it was accompanied by UBS's Employee Forgivable Loan Agreement. (Struthers Decl. Ex. A, ¶ 2.) Even if the Employee Forgivable Loan Agreement was not the Promissory Note itself, but was instead the document attached as Exhibit B to Plaintiff's Declaration, this document explicitly refers to the Promissory Note in connection with the issuance of the Loan. (Struthers Decl. Ex. B.) Therefore, Plaintiff's alleged facts do not raise a genuine issue as to her fraud claim for purposes of this motion.

Moreover, Plaintiff's allegations of fraud and duress are not specifically directed at the arbitration clause, but apply to the entire Promissory Note. Plaintiff's First Amended Complaint seeks rescission of the entire Promissory Note, with the exception of terms regarding the loan, payment, and forgiveness. (FAC ¶ 72.) The Ninth Circuit has held that the existence of fraud in the inducement and economic duress as to an agreement as a whole remains a question for the arbitrator. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 726 (9th Cir. 1999). Therefore, even if Plaintiff's fraud and duress claims were not governed by New York law, they are not sufficiently targeted at the arbitration clause to require a trial before arbitration.

Accordingly, the Court concludes for purposes of this motion that the Promissory Note signed by Plaintiff contains a valid arbitration clause. The scope of the clause itself is not in dispute. Because Plaintiff's claims stem from her employment at UBS, those claims are covered by the language of the arbitration clause. However, even if the arbitration clause of the Promissory Note is invalid, Plaintiff is still compelled to arbitrate based on the arbitration clause in her NASD Form U-4.

**IV.    The Form U-4 Arbitration Clause**

Plaintiff objects to the arbitration clause in her executed U-4 form as an unconstitutional condition forcing her to choose between her right to court access and her right to pursue her

08cv1381

chosen occupation.  Generally, the government may not require a person to give up a constitutional right in exchange for an unrelated discretionary benefit.  <u>Vance v. Barrett</u>, 345 F.3d 1083, 1091-92 (9th Cir. 2003).  Here, Plaintiff alleges that the SEC imposed such a condition when it promulgated 17 C.F.R. § 240.15b7-1 requiring brokers to register with securities organizations.  To establish state action, a plaintiff must show that the state is "responsible for the specific conduct of which the plaintiff complains."  <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982).  Here, the challenged regulation requires only that brokers register with securities organizations.  The NASD itself required the arbitration agreement.  Accordingly, the Court concludes that the arbitration clause in the U-4 form is valid.

Along with her Rule 59 motion, Plaintiff has submitted extensive research detailing the relationship between the federal government and self-regulatory organizations like the NASD in support of her argument that the U-4 Form arbitration clause constitutes state action.  (Mot. at 27-53.)  However, "a party that fails to introduce facts in a motion or opposition cannot introduce them later in a motion to amend by claiming that they constitute 'newly discovered evidence' unless they were previously unavailable."  <u>Zimmerman</u>, 255 F.3d at 740.

Plaintiff has not cited any controlling authority holding that such a clause is state action in this context.  Additionally, the Supreme Court has enforced a similar arbitration agreement.  <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 28 (1991).  In this case, the Court is similarly confident that arbitration is appropriate and adequate.

## V.    Plaintiff's Arguments Against Application of the Federal Arbitration Act

In an attempt to avoid any application of the Federal Arbitration Act ("FAA") to this case, Plaintiff claims that she is exempt under Section 1 of the Act, which excludes from coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  Plaintiff argues that, because her function at UBS was to buy and sell securities on the national exchanges, she engaged in transportation of those securities in interstate commerce.  (Mot. at 86.)  The Supreme Court has rejected similar attempts to expand the exemption clause of Section 1.  In <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105 (2001), the Court held that the exemption

clause should be read narrowly in light of the specific examples it provides. Id. at 114-15. In so holding, the Court relied on the maxim ejusdem generis, the statutory canon that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Id. (internal quotes omitted). Restricting the general language of the exemption based on its context, the Court concluded that "Section 1 exempts from the FAA only contracts of employment of transportation workers." Id. at 119. The Court reasoned that Congress probably excluded such workers from the FAA "for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers." Id. at 121. In light of the Supreme Court's narrow reading of the statutory exemption, this Court is unpersuaded that Plaintiff's securities trading activity renders her a transportation worker.

Finally, Plaintiff argues that the FAA as applied by the Federal Judiciary is unconstitutional. (Mot. at 55-85.) Plaintiff's motion admits that no case law supports this contention, asserting that her argument is a matter of first impression in the federal courts. (Mot. at 55.) Accordingly, the Court declines to adopt Plaintiff's argument that the FAA is unconstitutional as applied to parties who do not wish to arbitrate, especially where Plaintiff did not raise this argument until her instant motion. Zimmerman, 255 F.3d at 740.

## Conclusion

Plaintiff has not shown that the Court's previous ruling was clearly erroneous. Accordingly, the Court denies Plaintiff's motion to alter or amend the judgment.

IT IS SO ORDERED.

DATED: May 7, 2009

MARILYN L. HUFF, District Judge

UNITED STATES DISTRICT COURT